**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARK CAIRNS,** | : | **CIVIL ACTION** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **NO.  2:14-CV-05671** |
| | : | |
| **HIBU PLC,** *et al.*, | : | |
| | : | |
| | : | |
| **Defendants.** | : | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT**

Defendants hibu plc, hibu Inc., and Mike Pocock (collectively, "Defendants"), by and through their undersigned attorneys, hereby submit this brief Reply in further support of Defendants' Motion for Summary Judgment.  As set forth in greater detail below, there is nothing in Plaintiff's Opposition that demonstrates that any material facts in this matter are in dispute.  Realizing this, Plaintiff resorts to sweeping conclusions that are neither supported in the factual record nor in the law.  Plaintiff's claims cannot withstand summary judgment based on such conclusory statements.

Defendants note a critical element missing from Plaintiff's Opposition – any evidence that Plaintiff did not lead a campaign along with James McCusker to undermine hibu's leadership and assist Joe Walsh's efforts to purchase hibu's U.S. business at a low price.  Notably, Plaintiff submitted an affidavit from Mr. Walsh – a central figure in the plot to undermine hibu's leadership to support his Opposition. (Plaintiff's Opposition ("Opp.") Exh. L.)  This affidavit, however, simply confirms that Mr. Walsh worked closely with Mr. Cairns at hibu, their close relationship continued after Mr. Walsh left hibu, and Mr. Walsh subsequently put

together an offer to purchase hibu's U.S. business.  Conspicuously absent from Mr. Walsh's affidavit is any denial of the allegations that are the crux of this case.  Mr. Walsh does not deny that Plaintiff and Mr. McCusker were leading a campaign to undermine hibu's leadership.  Nor does Mr. Walsh deny that Plaintiff and Mr. McCusker were assisting his efforts to purchase hibu's U.S. business.  Similarly, Mr. Walsh's affidavit does not include any statements denying that Plaintiff and Mr. McCusker had phone conversations with him about hibu's business around the time when critical strategy meetings were taking place at hibu.  It is this conduct of Plaintiff and Mr. McCusker that Defendants believed to be disloyal and against the interests of hibu's employees and shareholders and also the reason for Plaintiff's and Mr. McCusker's terminations without severance.  Because Plaintiff failed to offer any evidence in his Opposition to rebut these key material facts that go to the heart of his claims, Plaintiff's claims should be dismissed as a matter of law.

## FURTHER ARGUMENT

In order to survive a motion for summary judgment, the nonmoving party must rely on the existing record to show that material facts are in dispute. *GMC v. New A.C. Chevrolet*, 263 F.3d 296, 321 (3d Cir. 2001) (nonmoving party "must point to pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any… that create a genuine issue of material fact….") (internal quotations omitted); *Trent v. Test Am., Inc.*, 2013 U.S. Dist. LEXIS 61255, at *15 (E.D. Pa. April 30, 2013) (to overcome summary judgment, nonmoving party "cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions").  The nonmoving party may not misrepresent the facts that are in the record. *Trivedi v. Slawecki*, 2014 U.S. Dist. LEXIS 167250, at *47 (M.D. Pa. Dec. 3, 2014) ("Arguments made in briefs 'are not evidence and cannot by themselves create a factual dispute sufficient to defeat a

summary judgment motion.'"), quoting *Jersey Cent. Power & Light Co. v. Twp. Of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985).  Where the record does not support the assertions of the nonmoving party, such assertions must be ignored and summary judgment must be granted as a matter of law. *Haymond v. Lundy*, 2001 U.S. Dist. LEXIS 630, at *4 (E.D. Pa. Jan. 29, 2001) ("The court has a duty to grant summary judgment when the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.").

Plaintiff's Opposition is riddled with factual inaccuracies and blatant misrepresentations of the record.  For example, Plaintiff asserts on p.3 that Christian Wells, hibu's General Counsel, was a "direct source of information about Joe Walsh and his potential plans" and that Patti Seda, hibu's former Director of Human Resources, "learned this information directly from [Christian] Wells."  Plaintiff cites the notes from Ms. Seda's interview in support of these assertions, even though the notes do not state this. (*See* Opp. Exh. J.)  Rather than note every single misrepresentation in this Reply, Defendants chose to address only the most significant inaccuracies.

## I.   Plaintiff Does Not Dispute the Material Facts Undermining His Wage Payment and Collection Law (WPCL) Claim.

Plaintiff concedes that he must "demonstrate that he had a contractual right" to severance for his WPCL claim to survive. (Opp. at 9.)  Plaintiff, however, has not shown, nor can he show, that such a contractual right exists.  Plaintiff admitted in his Verified Complaint that he has no written agreement entitling him to severance from hibu. (*Compl.* ¶ 80) ("Mr. Cairns was not a party to a formal, written employment contract with hibu Inc.")  He also testified that he did not execute any such agreement. (Defendants Motion for Summary Judgment ("Dfts") Exh. 7, *Cairns Dep.* at 160:13-16, 161:16-17.)  He now claims that such a contract exists, that

"Defendants have not confirmed that [the contract] does not exist," and that Defendants failed to

return it to him. (Opp. at 10.)

Other than Plaintiff's self-serving testimony, there is nothing in the record that supports

these allegations.  Plaintiff cannot rely on the absence of factual evidence or his own self-serving

statements to establish his claim. *See Bocobo v. Radiology Consultants of S. Jersey, P.A.*, 477

Fed. Appx. 890, 900 (3d Cir. 2012) (holding plaintiff may not rely on "his own self-serving

allegations" to defeat a motion for summary judgment); *Rodriguez v. AMTRAK*, 2012 U.S. Dist.

LEXIS 85390, at *12-13 (E.D. Pa. June 20, 2012) ("The party opposing the motion… cannot

rely merely upon bare assertions, conclusory allegations or suspicions to support its claim.")

(internal quotations omitted).  Furthermore, Defendants confirmed that there exists no contract

entitling Plaintiff to severance. (*See* Dfts. Exh. 7, *Cairns Dep.* at 160:13-16, 161:16-17; Dfts.

Exh. 4; Dfts. Exh. 5; Dfts. Exh. 8.)  Defendants have not "fail[ed] to produce" the contract

because Defendants cannot produce what does not exist.[1/]

Plaintiff alternatively asserts in his Opposition that there existed a "policy, pattern and

practice at hibu to pay reasonable severance to terminated employees." (Opp. at 10.)  That

argument also does not save Plaintiff's claim.  First, a "policy, pattern and practice" alone is not

enough to establish a contractual obligation under the WPCL. *O'Brien v. Fifth Third Mortg. Co.*,

2015 U.S. Dist. LEXIS 63775, at *24, *30 (E.D. Pa. May 13, 2015) (granting defendant's motion

for summary judgment on plaintiff's WPCL claim because employer's written severance policy

did not rise to an enforceable contract).  The policy, pattern or practice must be offered as a

binding contract to fall within the statute. *See id.* at *28-30; *Morosetti v. Louisiana Land*

*Exploration Co.*, 564 A.2d 151, 152-53 (Pa. 1989) ("It is not sufficient to show they had a

---

[1/]     Moreover, Plaintiff's failure to cite such contract in his Complaint and/or compel the production of such
contract suggests Plaintiff does not actually believe the contract exists.

[severance] policy. It must be shown that they intended to offer it as a binding contract.")  There is nothing in the record suggesting, let alone demonstrating, that any purported severance "policy, pattern and practice" was offered to Plaintiff as a binding contract.

Second, even if a policy or practice alone was sufficient to create a contractual obligation (which it is not), the record lacks any evidence demonstrating that there existed a "policy, pattern and practice" of providing severance to *all* terminated employees. (*See* Dfts. Exh. 7, *Cairns Dep.* at 159:1-7, 167:21-168:10; Dfts. Ex. 1, *Wells Dep.* at 53:14-54:6.)  Plaintiff does not dispute that severance was not provided in every termination. *Id.*  Plaintiff's Complaint alleged only that severance was given to "several executives." (*Compl.* ¶ 83.)  He testified that he was only aware of severance being paid to employees who were let go as part of reductions in force and that he was not aware of all terminations that took place at hibu. (S*ee* Dfts. Exh. 7, *Cairns Dep.* at 159:1-17.)  He further acknowledged that hibu maintained the discretion as to when to offer severance to a terminated employee. (*See* Dfts. Exh. 7, *Cairns Dep.* at 168:7-10.)  Plaintiff also testified that the receipt of severance was conditioned on the execution of a release of claims and admits that he did not sign one. (Dfts. Exh. 7, *Cairns Dep.* at 176:10-177:1.)

In a last ditch effort, Plaintiff resorts to falsely alleging in his Opposition that Mr. Wells "confirmed at his deposition that Cairns is entitled to severance on the same terms as Mr. McCusker" and that Mr. Wells "has not disputed the legal obligation to pay severance." (Opp. at 10.)  Plaintiff misrepresents Mr. Wells' deposition testimony.  Mr. Wells testified that hibu did *not* have a policy requiring payment of severance to employees; rather, he stated that hibu formerly had a discretionary practice of *sometimes* providing severance benefits to employees who left as "good leavers" or "no-fault" leavers and hibu used the same method to calculate such benefits for employees who left as "good leavers" or "no-fault" leavers. (Dfts. Exh. 1, *Wells Dep.*

at 53:14-55:18.)[2] The only instance in which Plaintiff was ever mentioned in the severance

discussion during Mr. Wells' deposition was when Plaintiff's counsel asked whether hibu would

have used the same method for calculating a hypothetical severance payment for Plaintiff if he

had left as a "good leaver" or "no-fault leaver," to which Mr. Wells responded that it would have

used the same method. (Dfts. Exh. 1, *Wells Dep.* at 55:13-18.)

There is nothing in the record demonstrating that Plaintiff was a "good leaver" entitled to

severance.  Plaintiff cannot misrepresent Mr. Wells' testimony to create a new argument to

establish his claims. *Trivedi*, 2014 U.S. Dist. LEXIS 167250, at *47 ("the non-moving party may

not rely on allegations or denials in its own pleading… [and] cannot rely on unsupported

allegations").

Because it is undisputed that no written agreement or binding policy or practice

contractually obligated hibu to pay Plaintiff severance, Plaintiff's WPCL claim fails as a matter

of law.[3] *See O'Brien*, 2015 U.S. Dist. LEXIS 63775, at *24-30 (severance policy was not an

enforceable contract and could not provide basis for WPCL claim); *Morosetti*, 564 A.2d at 152-

53 (employee's belief that there was a severance policy was not enough to create an enforceable

contract and "it is basic contract law that there must be more than a general awareness; there

must be an intended, definite, specific offer before any offer can be accepted or any enforceable

contract created").

## II.     The Material Facts Underlying Plaintiff's Defamation Claim Are Not in Dispute.

Plaintiff asserts in his Opposition that he suffered pecuniary harm as a result of the

alleged defamatory statements contained in the Email, that Defendants abused their conditional

---

[2]        Mr. Wells stated "good leavers" at his deposition but the stenographer recorded his testimony as "good
leaders."
[3]        Plaintiff's failure to cite any case law in his Opposition in support of his WPCL claim suggests an
acknowledgment that both the factual record and the case law support the grant of summary judgment dismissing the
claim.

privilege in the dissemination of the Email, and that statements in the Email were untrue, namely that the investigation was not "thorough" and that Plaintiff was not "disloyal." (Opp. at 13-22.) The factual record states otherwise.

### A. The Absence of Any Evidence of Damages in the Record is Fatal to Plaintiff's Claim.

Plaintiff asserts in his Opposition that (1) Defendants acted with actual malice in sending the Email and therefore Plaintiff does not have to show any damages, and (2) even if Defendants did not act with actual malice, Plaintiff does not have to prove damages because he alleges defamation *per se*. (Opp. at 16 ("Cairns' damages must be evaluated under the law of defamation per se…damages are to be presumed, and need not be proved…."), 17 ("But, the defamatory statements about Cairns are defamatory per se.  So, proof of actual loss is not required…In such a case, actual damage to reputation are to be presumed.")  Neither the factual record nor the law support Plaintiff's assertions.

### 1. Plaintiff Has Not Shown that Defendants Acted with Actual Malice.

While Plaintiff is correct that damages are presumed where a defendant acted with actual malice, Plaintiff minimizes the high burden of proof required to show actual malice.  As the Pennsylvania Supreme Court set forth in *Sprague v. Porter*, 2013 Phila. Ct. Com. Pl. LEXIS 368, at *56-57 (Nov. 1, 2013):

> Demonstrating actual malice is a difficult burden because it 'implies at a minimum that the speaker entertained serious doubts about the truth of his publication . . . . or acted with a high degree of awareness of . . . probable falsity'. . . . The focus in determining actual malice is not whether the statement was false but whether the publisher knew that the statement was false or probably false when it was published.  A plaintiff cannot prevail without clear and convincing evidence of such a 'calculated falsehood.' (internal citations omitted).

7

Plaintiff attempts to satisfy this onerous burden through a single conclusory statement that "actual malice is established by the deposition testimony of Wells and Green, who each made clear that no investigation of Mr. Cairns' alleged conduct revealed any evidence of corporate disloyalty." (Opp. at 18.)

Nothing in the factual record supports this assertion, as evidenced by Plaintiff's failure to cite to any of Mr. Wells' deposition testimony and the fact that the three pages of Mr. Green's deposition transcript that Plaintiff cited in his Opposition actually consist of testimony about how "project Green was about investigating existing hibu employees passing confidential information outside the company to Mr. Walsh" and that Defendants "weren't aware of [Plaintiff] passing [confidential] information to other people" besides Mr. Walsh. (Opp. Exh. E, *Green Dep.* at 97:4-99:6.)

Furthermore, as explained below in Section II.C.2, it is undisputed that Plaintiff was a vocal critic of Michael Pocock and led a campaign to undermine leadership. (Dfts. Exh. 7, *Cairns Dep.* at 39:2-3, 204:8-15, 22-205:7, 206:1-11; Dfts. Exh. 11, *Cairns' Responses to RFAs*, at Nos. 13-16; Dfts. Exh. 11.; *see also* Opp. Exh. L)  Both of these actions demonstrate a lack of loyalty.

Thus, Plaintiff has not shown that Defendants acted with actual malice. *See Sprague*, 2013 Phila. Ct. Com. Pl. LEXIS 368, at *58-59 ("Writing true things with disapproval or even ill will is not actual malice in the legal sense… [a]ctual malice must involve knowledge of falsity or reckless disregard of falsity….").

### 2.    Plaintiff Has Not Suffered Any Damages.

Because Plaintiff cannot show that Defendants acted with actual malice, he must demonstrate that he suffered either special damages (required in non-defamation *per se* claims) or general damages (in claims of defamation *per se*). *Beverly Enters v. Trump*, 182 F.3d 183, 188

at n.2. (3d Cir. 1999) ("In the absence of actual malice, even if the plaintiff need only prove general damage to reputation… he or she cannot rely on a presumption of damages; he or she must offer actual specific evidence of such general damages."), citing *Agriss v. Roadway Express, Inc.*, 483 A.2d. 456, 467-68 (Pa. Super. Ct. 1985). Plaintiff, therefore, incorrectly asserts that he does not need to show that he suffered *any* damages because the statements in the Email constitute defamation *per se*.[4/]

To establish defamation *per se*, a plaintiff must show that that he suffered general damages in the form of reputational harm or humiliation. *Synygy, Inc. v. ZS Assocs.*, 110 F. Supp. 3d 602, 613 (E.D. Pa. 2015) (to prove defamation *per se*, plaintiff must establish "general damages, i.e., proof that one's reputation was actually affected by defamation or that one suffered personal humiliation, or both…"), quoting *Joseph v. Scranton Times L.P.*, 959 A.2d 322, 344 (Pa. Super. Ct. 2008).

Putting aside Plaintiff's "belief" that the statements in the Email harmed his reputation, there is nothing in the record demonstrating that Plaintiff suffered such general damages as a result of the Email. To the contrary, it is undisputed that all of the individuals who communicated with Plaintiff about the Email remained his friends. (Dfts. Exh. 7, *Cairns Dep.* at 39:6-49:17.) One of those individuals, Mr. Walsh, offered Plaintiff highly-compensated employment at one of hibu's main competitors. (Dfts. Exh. 7, *Cairns Dep.* at 109:11-111:3.) Plaintiff nevertheless asserts in his Opposition that he "lost friendships" as a result of the Email. (Opp. at 7, 17.) Again, there is nothing in the record supporting this bald assertion. Moreover, those alleged "friends" could have stopped talking to Plaintiff because of his personality, because they had their own personal matters going on, or a host of other reasons unrelated to the

---

[4/]     Because Defendants' argument on this subject was fully briefed in their Memorandum of Law, for the sake of brevity here, Defendants will address only Plaintiff's defamation *per se* claim. Defendants do not concede that the alleged defamatory statements constitute defamation *per se*.

statements in the Email.  Indeed, Plaintiff testified that he did not know why these friends stopped communicating with him. (Opp. Exh. A, *Cairns Dep.* at 66:18-68:20).  Thus, there is nothing in the record tying any loss of friendships to the alleged defamatory statements.

Plaintiff further claims that he had "trouble attracting the assistance of a headhunter" and was unemployed for over a year because of the Email. (Opp. at 7, 17.)  The factual record not only does not support this assertion, but it contradicts it.  Plaintiff testified that he did not look for full-time employment, or alternatively did not accept certain positions, because of health issues and that by the time his health improved, he no longer needed the assistance of a job recruiter. (Dfts. Exh. 7, *Cairns Dep.* at 54:21-55:24 (Plaintiff states that he connected with a recruiter "towards the end of 2013," but did not subsequently follow up because his health "never improved sufficiently to do so.  And by the time it did, other opportunities arose."), 106:18-107:2 (Plaintiff obtained paid consultancy work at the end of 2013 and beginning of 2014), 107:19-23 (Plaintiff's health condition prevented him from taking certain professional positions), 111:17-23 (Plaintiff obtained new position in September or October 2014); Dfts. Exh. 27, *Cairns' Answers to Ints.*, at Nos. 2-3.)

Plaintiff's case for damages is further undermined by the fact that he produced no documents relating to his job search efforts or other damages he suffered. (Dfts. Exh. 27, *Cairns' Answers to Ints.* at Nos. 3 and 17; Dfts. Exh. 28, *Cairns' Responses to Defendants First Set of Requests for Production of Documents*, at Nos. 8, 9 and 12.)  He also admitted that he did not know "what 'job opportunities' were lost due to the 'Email'." (Dfts. Exh. 27, *Cairns' Answers to Ints.*, at No. 3.)

In sum, nothing in the record supports Plaintiff's contention that he suffered harm in the form of actual injury to his reputation (with respect to either his acquaintances or those in his

field of business) or that he suffered economic damages, given that he obtained lucrative employment in his field when his health permitted. *See Sprague*, 2013 Phila. Ct. Com. Pl. LEXIS 368, at *66-67 (plaintiff could not establish general damages where there was no "damage to his business . . . [and] [h]is personal and family relationships were unchanged"). Nor can Plaintiff's claims of personal embarrassment or emotional distress, standing alone, establish that he suffered general damages. *Id.* at *64 ("The most evidence that Mr. Sprague proffered was that the article 'upset' him and made him 'furious'… Personal upset is insufficient evidence of damages under the law").

In the absence of any facts showing that Plaintiff suffered damages as a result of the alleged defamatory statements in the Email, Plaintiff's defamation claim must fail. *See ZS Assocs.*, 110 F. Supp. 3d at 616-17 (holding plaintiff proved neither special damages nor general damages where plaintiff presented no testimony that other companies or a third party "altered its opinion of [plaintiff] as a result of [defendant's] press release" and plaintiff ultimately found additional work even though defamatory press release required plaintiff to have "many more discussions" with companies to obtain work); *Synygy, Inc. v. Scott-Levin, Inc.*, 51 F. Supp. 2d 570, 581 (E.D. Pa. 1999) ("Assuming <u>arguendo</u> that [statement] does constitute defamation <u>per se</u>… plaintiff's claim would still fail because plaintiff has not shown *general* damages – proof that one's reputation was actually affected by the slander or that one suffered personal humiliation.").

**B.    Plaintiff Does Not Dispute that Defendants Had a Legitimate Reason for Notifying hibu Employees about the Reasons for His Termination.**

Plaintiff concedes in his Opposition that it was "reasonably necessary" for Defendants "to explain Cairns' departure from hibu" and therefore had a conditional privilege to disclose his termination to hibu employees. (Opp. at 15.) Plaintiff, however, then asserts Defendants abused

the conditional privilege in doing so. *Id.*  In order to show the abuse of the conditional privilege, Plaintiff must demonstrate that Defendants acted with malice, spite, or improper purpose. *Daywalt v. Montgomery Hosp.*, 573 A.2d 1116, 1119 (Pa. Super. Ct. 1990) (holding that abuse of the conditional privilege is shown through evidence that defendants acted upon "improper motives, for improper reasons, or without reasonable cause").  Plaintiff has not satisfied this burden.

First, Plaintiff does not dispute any of Defendants' stated reasons for sending the Email, *i.e.*, that Plaintiff was a long-time, well-known, senior management-level employee who vocally criticized the Company's leadership during a highly sensitive time when the Company was attempting to restructure its massive debt. (*See* Dfts. Exh. 7 *Cairns Dep.* at 204:8-15, 22-205:1-7, 261:12-269:22; Dfts. Exh. 11, *Cairns' Responses to RFAs*, at Nos. 13-16.)  Instead, he asserts that the Email was sent to "scapegoat Cairns, malign a beloved senior executive and to instill a culture of fear." (Opp. at 15.)  Plaintiff does not cite any part of the factual record to supports this conclusory assertion.

Second, Plaintiff does not dispute that a credible anonymous source informed Defendants that Plaintiff, while still employed by hibu, was leading a campaign along with Mr. McCusker to undermine hibu's leadership. (Dfts. Exh. 12.)  Even Mr. Walsh does not deny the existence of such campaign or Plaintiff's involvement in the campaign. (Opp. Exh. L.)  Defendants did not know how many employees were influenced by Plaintiff's campaign efforts, so it was reasonable for Defendants to notify all hibu employees that they believed Plaintiff's conduct to be disloyal and would view similar conduct by other employees to also be disloyal. (*See id.*)  Because Plaintiff has not shown that Defendants sent the Email due to any improper motive, or for improper reasons, or without reasonable cause, Plaintiff cannot demonstrate that Defendants

abused their conditional privilege in notifying hibu employees about Plaintiff's termination. *See Daywalt*, 573 A.2d at 1119 (affirming summary judgment for defendant where plaintiff "utterly failed to show any abuse of the privilege"); *Moore v. Cobb-Nettleton*, 889 A.2d 1262, 1270 (Pa. Super. Ct. 2005) (affirming summary judgment because "the record fails to establish that Appellant proved that the publication was actuated by malice"); *see also Miketic v. Baron*, 675 A.2d 324, 330 (Pa. Super. Ct. 1996) (finding as a matter of law that plaintiff's complaint "failed to demonstrate facts which would support a finding that the publication was a result of malice or improper purpose").

### C. The Undisputed Material Facts Show that the Statements in the Email are True.

Plaintiff claims that there are disputed issues of fact precluding summary judgment on his defamation claim, namely (1) whether the investigation was "thorough" and (2) whether his conduct was "disloyal." Neither of these arguments saves his claim.

#### 1. The Factual Record Demonstrates that Defendants Conducted a Thorough Investigation.

Plaintiff asserts in his Opposition that Defendants did not conduct a "thorough investigation" as stated in the Email. (Opp. at 3, 19-20.) Plaintiff, however, cannot dispute that as part of the investigation, Defendants reviewed the phone records of nearly a dozen employees, including Plaintiff's, over a one year period. (*See* Dfts. Exh. 13, *Green Aff. at ¶¶ 5-6 and Exhs. A and B*.) Plaintiff further cannot dispute that Defendants monitored Plaintiff's incoming and outgoing calls, including voicemails that were left on his hibu phone. (*See id. at ¶¶ 5-7 and Exhs. A, B, C, and D*.) Plaintiff also cannot dispute that Defendants reviewed emails sent to and from Plaintiff's hibu email account over a one year period. (*See, e.g.*, Dfts. Exh. 7, *Cairns Dep.* at 261:4-269:22; Dfts. Exh. 21; Dfts. Exh. 22; Dfts. Exh. 23.) Defendants compared the phone calls and email traffic with the timing of budget and other important hibu business meetings, as

well as Mr. Walsh's communications with CoCom. (*See* Dfts. Exh. 1, *Wells Dep.* at 92:6-9; Dfts. Exh. 13, *Green Aff. at ¶¶ 5-6 and Exhs. A and B*; Dfts. Exh. 14; Dfts. Exh. 20, *Green Dep.* at 68:15-24.)  Based on the foregoing, it is substantially true that Defendants' investigation was "thorough." *Gilbert v. Bionetics Corp.*, 2000 U.S. Dist. LEXIS 8736, at *10 (E.D. Pa. June 8, 2000) ("The truth required to avoid liability for defamation is not complete truth, but rather substantial truth."), citing *Kilian v. Doubleday & Co.*, 367 Pa. 117 (Pa. 1951).

Moreover, the word "thorough" is not in and of itself a defamatory word. *See Gibney v. Fitzgibbon*, 547 Fed. Appx. 111, 113 (3d Cir. 2013) (to be capable of defamatory meaning, a statement must "tend[] so to harm the reputation of another as to lower him in the estimation of the community or to deter third parties from associating or dealing with him").  Thus, even if the investigation was not in fact "thorough," such a characterization cannot form the basis for a defamation claim. *See id.* at 113-14 (holding statement was not defamatory as a matter of law where "even if [the] statement were untrue, it would not lower him in the estimation of the community or... deter third parties from associating or dealing with him") (internal quotations omitted).

Plaintiff also claims that the investigation was not thorough because "investigation protocols" were not followed. (Opp. at 19.)  Nothing in the record, including the transcript pages cited by Plaintiff, supports the allegation that investigation protocols existed, let alone were not followed.  Furthermore, Plaintiff does not dispute that he has no experience conducting corporate investigations. (Dfts. Exh. 7, *Cairns. Dep.* at 241:14-17.)  Plaintiff, therefore, cannot conclude that the investigation lacked protocols and was otherwise not thorough.

### 2.     Plaintiff's Conduct was Disloyal.

Plaintiff also contends in his Opposition that he "was never disloyal to hibu." (Opp. at 5.) Yet Plaintiff proudly boasts that he was not loyal to hibu's leadership. (Opp. Exh. A, *Cairns*

*Dep.* at 242:4-7; 274:18-23 (testifying that Mr. Pocock and the leadership team did not "deserve" his loyalty.)  He further admits that he was not supportive of leadership's initiatives and was a vocal critic of Mr. Pocock. (Opp. at 20; *see also* Dfts. Exh. 7, *Cairns Dep.* at 204:8-15, 22-205:7, 206:1-11.)  Plaintiff does not dispute that his criticism occurred during a time when hibu was attempting to restructure its significant debt. (*See* Dfts. Exh. 7, *Cairns Dep.* at 204:8-15, 22-205:1-7, 261:4-269:22; Dfts. Exh. 11, *Cairns' Responses to RFAs*, at Nos. 13-16.)  He further does not deny sending disparaging emails about hibu leadership. (Dfts. Exh. 21; Dfts. Exh. 22; Dfts. Exh. 23.)  Instead, Plaintiff tries to justify his actions.

Whether or not Plaintiff's criticism was legitimate and justified, however, is irrelevant.  It is undisputed that Plaintiff was a long-time, well-known member of management who refused to show support for the strategic plan enacted by the leadership team. (Dfts. Exh. 7, *Cairns Dep.* 180:20-181:6, 204:8-15, 22-205:1-7.)  Plaintiff further offers no evidence that demonstrates that he was not leading a campaign to undermine hibu's leadership. (*See* Opp.; Opp. Exh. L.)  By vocally criticizing Mr. Pocock and the leadership team and their strategic plan and leading a campaign to undermine them, Plaintiff also undermined the strategic plan that was fully backed by the Board of Directors and CoCom to help hibu overcome its financial difficulties.[5]

Plaintiff's public lack of support for Mr. Pocock and the leadership team, therefore, harmed the Company's – and its lenders' – financial interests.  Indeed, Plaintiff does not dispute that a lack of support for leadership would weaken the value of the business. (*See* Dfts. Exh. 12, "[Joe Walsh] is trying to raise a campaign of named and anonymous communications to the CoCom which gives CoCom an alternative, and obviously negative, view of the actions taken by

---

[5]    It is undisputed that Mr. Pocock and his leadership team pursued their strategic plan with the full support of the Board of Directors and CoCom. (Dfts. Exh. 9, *Pocock Dep.* 26:11-27:19, 28:20-29:8, 35:10-25, 74:24-75:20, 83:1-14.)  They also regularly reported to CoCom concerning its progress. (*Id.* at 74:24-75:20, 83:1-14).  Thus, contrary to Plaintiff's allegations, hibu's lenders were not in the dark and being misled by Mr. Pocock and the leadership team.

Mike [Pocock] and his team and Hibu's prospects under Mike's leadership… [t]he aim is to persuade CoCom that Joe's bid is their best option… the internal aspects of this campaign… is being led by Mark Cairns and Jim McCusker… It shouldn't surprise you that their loyalty is to Joe Walsh… who simply wants to buy the US business at a give away price.")

Under these circumstances, it is entirely true – and certainly substantially true – that Defendants honestly believed Plaintiff's actions were "disloyal and against the interests of [hibu] employees and other stakeholders." (Dfts. Exh. 26.)  "The issue is not whether [plaintiff] committed a fraudulent act, but whether the Defendants honestly believed that [plaintiff] had committed a fraudulent act and terminated him on that basis." *Keeshan v. Home Depot, U.S.A., Inc.*, 2001 U.S. Dist. LEXIS 3607, at *54-55 (E.D. Pa. Mar. 27, 2001) (defendants established truth defense where they "honestly believed [plaintiff] had committed a fraudulent act in violation of company policy and terminated him on that basis… and [plaintiff] has not been able to disprove the Defendants' proffered reason").

Plaintiff devotes significant discussion in his Opposition to cases involving claims of breach of the fiduciary duty of loyalty, arguing that "a jury will have to assess th[e] testimony in light of the law applicable to the duty of loyalty to determine whether it is accurate to accuse Cairns of disloyalty . . ." (Opp. at 20-22.)  Such discussion is merely a red herring that is meant to distract the Court and obfuscate the legal implications of the Email.  The "law applicable to the duty of loyalty" is *not applicable* to this defamation claim.  To clarify, Defendants did not accuse Plaintiff of a "breach of fiduciary duty of loyalty" (a narrowly defined legal concept, and an actionable tort claim in itself), but rather of activity Defendants "considered to be disloyal." (Dfts. Exh. 26; *see* Dfts. Exh. 7, *Cairns Dep.* at 238:23-239:4, 22-240:7, 246:12-19.)[6]

---

[6]       Furthermore, under Pennsylvania law, the meaning of "disloyal" is gauged by the recipient's understanding of it. 42 Pa. Cons. Stat. Ann. § 8343(a) ("the plaintiff has the burden of proving… the understanding by the recipient

Starting from this faulty premise, Plaintiff argues that in defense of the defamation claim, Defendant must establish that Plaintiff committed a breach of his fiduciary duty of loyalty as an executive – essentially, that Defendants' burden to establish its defense to the defamation claim is the same as its burden to affirmatively establish the tort of breach of fiduciary duty were they to bring such a claim against Plaintiff. This is not the case. Defendants' burden is to establish that their statements were "made in good faith and were substantially true." *Gilbert*, 2000 U.S. Dist. LEXIS 8736, at *10; *see also Keeshan*, 2001 U.S. Dist. LEXIS 3607, at *54-55 (holding defendants successfully asserted truth defense because statements regarding their belief that former employee engaged in fraudulent acts were the substantial truth).

As outlined above, based on Defendants' investigation and Plaintiff's acknowledgment of the core facts underlying Defendants' statements (namely, that Plaintiff was not loyal to hibu's leadership team and that he was a vocal critic of Mr. Pocock), there can be no question that Defendants' statements were made in good faith and was substantially true. (Dfts. Exh. 1, *Wells Dep.* at 20:6-21:10; Dfts. Exh. 7, *Cairns Dep.* at 204:8-15, 22-205:1-7, 206:1-6; Dfts. Exh. 12, *Cairns' Responses to RFAs*, at Nos. 13-16; Dfts. Exh. 13, *Green Aff.* ¶¶ 5-7 *and Exhs. A-D*; Dfts. Exh. 20, *Green Dep.* at 29:24-30:3, 46:5-15, 50:3-8, 68:15-24.) Plaintiff's argument that his conduct did not breach a fiduciary duty of loyalty and the supporting cases cited by Plaintiff (all of which are in the context of a breach of fiduciary duty claim rather than a defamation claim) are therefore inapposite and irrelevant.[7/]

---

of [a communication's] defamatory meaning"). Virtually all of the recipients of the Email were not lawyers and were certainly not versed in the tenets of fiduciary duty law. (*See* Dfts. Exh. 26.) Accordingly, these recipients would have interpreted the word "disloyal" as it is used in day-to-day vernacular rather than the heightened legal meaning encompassed by the "fiduciary duty of loyalty" concept that Plaintiff attempts to ascribe to it.

[7/]    As part of his duty of corporate loyalty argument, Plaintiff asserts in his Opposition that the statements in the Email are false because Defendants have not identified any specific "sensitive information" that Plaintiff shared with Mr. Walsh. (Opp. at 21.) While this argument is irrelevant as discussed herein, Defendants note that the Email does not contain any statements that remotely accuse Plaintiff of sharing "sensitive information" or "company

## CONCLUSION

As set forth herein and in Defendants' Memorandum of Law in Support of their Motion for Summary Judgment and exhibits filed therewith, it is clear that the following material facts are not in dispute:

(1)  Plaintiff has no employment contract entitling him to severance;

(2)  A credible anonymous source informed Defendants that Plaintiff was leading a campaign to undermine hibu leadership;

(3)  Plaintiff sent derogatory emails about hibu senior management and had numerous phone calls with Mr. Walsh during the period in which Mr. Walsh was attempting to purchase hibu;

(4)  Plaintiff testified that he was not supportive of leadership's strategic plans and vocally criticized hibu's Chief Executive Officer;

(5)  Defendants believed, based on their investigation, that Plaintiff had engaged in disloyal conduct; and

(6)  Plaintiff has not demonstrated that he suffered any damages as a result of the alleged defamatory statements.

Accordingly, Defendants respectfully submit that the Court grant their motion for summary judgment and dismiss with prejudice Plaintiff's Complaint in its entirety, and award Defendants any other relief that the Court deems just and proper, including attorney's fees.

---

secrets" (as Plaintiff asserts on pages 14, 16 and 21 of his Opposition). (Dfts. Exh. 26.)  This is just another example of the factual misrepresentations made by Plaintiff in his Opposition.

Dated: May 6, 2016

Respectfully submitted,

   */s/ Bret A. Cohen*
Bret A. Cohen (admitted *pro hac vice*)
Gauri P. Punjabi (admitted *pro hac vice*)
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA  02111
Telephone: (617) 542-6000
bacohen@mintz.com
gppunjabi@mintz.com

William M. McSwain
David J. Woolf
Dennis M. Mulgrew, Jr.
DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, PA  19103-6996
Telephone: (215) 988-2700
William.McSwain@dbr.com
David.Woolf@dbr.com
Dennis.Mulgrew@dbr.com

## CERTIFICATE OF SERVICE

     I, Dennis M. Mulgrew, Jr., do hereby certify that a true and correct copy of the foregoing Reply in Support of Defendants' Motion for Summary Judgment was served upon counsel for the Plaintiff via ECF and electronic mail at the addresses indicated below.

Clifford E. Haines, Esquire
Haines & Associates
Widener Building, 5th Floor
1339 Chestnut Street
Philadelphia, PA  19107
chaines@haines-law.com

                       */s/ Dennis M. Mulgrew, Jr.*
                       Dennis M. Mulgrew, Jr.

Dated:  May 6, 2016

47574756v.4

# Defendants' Exhibit 28

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARK CAIRNS                              :
        *Plaintiff*                       :                CIVIL ACTION
    vs.                                :
                                          :
HIBU PLC, HIBU INC., MIKE POCOCK,        :
TONY BATES, BOB WIGLEY,                  :
ELIZABETH G. CHAMBERS,  JOHN             :
COGHLAN, TOBY COPPEL, CARLOS             :                NO.: 2:14-CV-05671
ESPINOSA de los MONTEROS,                :
KATHLEEN FLAHERTY, RICHARD               :
HOOPER and BOB GREGERSON                 :
        *Defendants*                      :

**PLAINTIFF, MARK CAIRNS' AMENDED RESPONSES TO
DEFENDANTS,HIBU PLC, HIBU INC., AND MIKE POCOCK'S
REQUEST FOR PRODUCTION OF DOCUMENTS**

      Plaintiff, Mark Cairns, by and through their undersigned counsel, hereby responds to

Request for Production of Documents issued by Defendants and avers as follows:

      1.    Any and all documents including communications referred to or used by you that

provide support for any and/or all of the allegations contained in the Complaint.

      **RESPONSE:**  Objection.  This is vague, overbroad and unduly burdensome and calls for

the production of attorney work product.  Subject to these objections and without waiver of any

objection, any and all documents that are not privileged have been produced.

      2.    Any and all notes, diaries, journals, calendars, logs, chronologies, or records of

daily or periodic events kept by you which relate to any of the allegations contained in the

Complaint including, but not limited to, documents that were kept contemporaneously with those

events.

      **RESPONSE:**   Plaintiff testified at his deposition that he kept an electronic calendar

which was on his hibu computer, which he returned when terminated.  Therefore, he does not

have any documents responsive to this request.

3.      Any and all documents regarding your employment with hibu including, but not limited to, employee agreements, personnel records, offer letters, performance reviews, positions applied for, promotions applied for, disciplinary actions, complaints, grievances, promotions, transfers, demotions, salary and benefits information, and any affidavits or statements in any form that in any way reference or relate to your employment with hibu.

**RESPONSE:**   Defendants maintained control over these documents. Plaintiff's personal copies were in his office on the day of his termination.  He was not present in the office and the documents were not returned to him when his office was packed up by a hibu employee (or whoever hibu arranged to secure his belongings).

4.      Any and all documents that regard, refer, and/or relate to any policies, practices or procedures of hibu, including, but not limited to, employee handbooks, personnel manuals, policies, guidelines, and/or any other document which you believe, allege, and/or claim governs or applies to the terms and conditions of your employment with hibu.

**RESPONSE:**   Defendants maintained control over these documents. Plaintiff's personal copies were in his office on the day of his termination.  He was not present in the office and the documents were not returned to him when his office was packed up by a hibu employee (or whoever hibu arranged to secure his belongings).

5.      Any and all documents that regard, refer, and/or relate to any lawsuits, litigation, administrative proceedings (including, but not limited to, claims for unemployment compensation), charges, claims or complaints, whether formal or informal, that you have made, brought or been involved with including, but not limited to, all documents concerning the

processing, resolution, and disposition thereof and all compensation and/or damages that you received as a result.

**RESPONSE:**   There are no documents outside of this lawsuit that are responsive to this request.  Defendants are in possession of any and all non-privileged documents that pertain to this lawsuit.

6.     Any and all documents that regard, refer, and/or relate to your sources of income from January 1, 2013 to the present including, but not limited to, federal and state income tax returns, and W-2 and 1099 forms.

**RESPONSE:**   Any and all documents that are not privileged have been produced.

7.     A copy of your current resume.

**RESPONSE:**   Any and all documents that are not privileged have been produced.

8.     Any and all documents that regard, refer, and/or relate to your attempts to obtain or secure employment and/or work after your employment with hibu was terminated.

**RESPONSE:**   Any and all documents that are not privileged have been produced.

9.     Any and all documents concerning each item of damage, injury or compensation claimed by you in this action including, but not limited to, any document concerning your claim for lost business opportunities, emotional distress, public humiliation, damage to reputation, liquidated damages and/or attorneys' fees and costs.

**RESPONSE:**   Any and all documents that are not privileged have been produced.

10.     Copies of the curriculum vitae and publications of any expert retained and/or consulted, regardless of whether you intend to call them at trial.

**RESPONSE:**   Objection.  This request is improper and intentionally seeks documents that are protected by the attorney-client privilege and/or work product doctrine.

11.    Any and all documents including, but not limited to, affidavits, letters, correspondence, emails, text messages, notes, and notes of conversations, which constitute, evidence or reflect any communications between you and any entities or persons including, but not limited to, Joe Walsh, James McCusker, Gary Shaw, John Wholey, and John Gregory, regarding the allegations set forth in the Complaint.

**RESPONSE:**    There are no documents responsive to this request, other than an affidavit produced in connection with the response to the motion for summary judgment.  Defendants control and/or possess Cairns' work provided electronic devices, including the phone he may have used to text, call, email or otherwise communicate with the persons identified in this request.  Cairns' access to the email account and the electronic devices was terminated at or around the date of his termination.  He cannot access the information, but it is in the possession and control of the defendants.

12.    Copies of all medical records, notes, reports and invoices for healthcare services related to any treatment and/or any counseling that you have sought or have received as a result of Defendants' alleged conduct.

**RESPONSE:**  Cairns does not consent to the release of his medical information.

13.    Any and all documents that regard, refer, and/or relate to your allegations in Paragraph 5 of the Complaint that hibu had an "established policy, pattern, and practice of providing certain severance benefits to executives without employment contracts."

**RESPONSE:** Defendants maintained control over these documents. Plaintiff's personal copies were in his office on the day of his termination.  He was not present in the office and the documents were not returned to him when his office was packed up by a hibu employee (or whoever hibu arranged to secure his belongings). Whatever Cairns has by way of documents came from defendants in discovery in this case.  Deposition transcripts are equally available to all parties.

14.     Any and all documents that regard, refer, and/or relate to your allegations in Paragraphs 4, 47 and 48 of the Complaint that you repeatedly raised concerns about hibu's lack of products, the failure of the strategic initiatives, the cost and continued growth of non-revenue generating global heads, the issues with budget numbers for digital products, and proposed sales force cuts.

**RESPONSE:** Defendants maintained control over these documents. Plaintiff's personal copies were in his office on the day of his termination.  He was not present in the office and the documents were not returned to him when his office was packed up by a hibu employee (or whoever hibu arranged to secure his belongings). Whatever Cairns has by way of documents came from defendants in discovery in this case.  Deposition transcripts are equally available to all parties.

15.     Any and all documents that regard, refer, and/or relate to your allegations in Paragraph 68 of the Complaint that Mr. Pocock's March 6, 2013 email (the "Email") caused "a commotion" and was "republished on blogs and forums across the Internet."

**RESPONSE:** *See*, Deposition testimony of Mark Cairns. The issue was discussed at length. The transcript is accessible and available to all parties.

16.     Any and all documents that regard, refer, and/or relate to your allegations that the Email was sent maliciously.

**RESPONSE:**   Objection.  This request calls for the production of documents that are subject to the protection of the work product doctrine.

17.     Any and all text messages, emails, and other documents regarding discussions between you and Joe Walsh, James McCusker, Gary Shaw, John Wholey, John Gregory, and/or any other person about the purchase of hibu's U.S. business in 2011, 2012, and/or 2013.

**RESPONSE:**   There are no documents responsive to this request, other than an affidavit produced in connection with the response to the motion for summary judgment.  Defendants control and/or possess Cairns' work provided electronic devices, including the phone he may have used to text, call, email or otherwise communicate with the persons identified in this request.  Cairns' access to the email account and the electronic devices was terminated at or around the date of his termination.  He cannot access the information, but it is in the possession and control of the defendants.

18.     Any and all text messages, emails, and other documents regarding discussions between you and Joe Walsh, James McCusker, Gary Shaw, John Wholey, John Gregory, and/or any other person about Mike Pocock and/or other members of hibu senior management in 2011, 2012, and/or 2013.

**RESPONSE:**   Cairns does not consent to the release of his medical information.

19.     Any and all documents referred to in your Rule 26(a)(1) Initial Disclosures dated June 12, 2015.

**RESPONSE:**  Any and all documents that are not privileged and that are within Cairns' possession and control have been produced.

20.     Any and all written statements by any witness, including, but not limited to, Joe Walsh, James McCusker, Gary Shaw, John Wholey, and John Gregory, concerning any of the allegations in the Complaint.

**RESPONSE:**  See, Affidavit of Joe Walsh attached to Cairns' response in opposition to defendants' motion for summary judgment. There are no other documents responsive to this request other than interview notes turned over by the defendants as a result of statements given in Project Green and which were provided by the Defendants in discovery.

21.     Identify all documents relating to each of the above-identified witness' testimony and whether or not you expect to introduce documents at the trial of this matter.

**RESPONSE:**  See response to No. 20.

**HAINES & ASSOCIATES**

Dated: <u>April 26, 2016</u>          BY: <u>/s/ *Clifford E. Haines*</u>
                          Clifford E. Haines
                          The Widener Building, 5th Floor
                          1339 Chestnut Street
                          Philadelphia, PA 19107
                          Telephone: 215-246-2200
                          chaines@haines-law.com
                          *Counsel for Plaintiff, Mark Cairns*

## CERTIFICATE OF SERVICE

I, Clifford E. Haines, Esquire, hereby certify that a true and correct copy of the foregoing

Plaintiff Mark Cairns' Amended Response to Request for Production of Documents of

Defendants, hibu PLC, hibu Inc., and Mike Pocock was served via electronic mail and U.S. First-

Class Mail, postage prepaid, to the addressed as follows:

William M. McSwain, Esquire
David J.Woolf, Esquire
Dennis M. Mulgrew, Jr., Esquire
DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6966
William.McSwain@dbr.com
David.Woolf@dbr.com
Dennis.Mulgrew@dbr.com
*Counsel for Defendants, hibu PLC;*
*hibu, Inc. and Michael Pocock*

Bret A. Cohen, Esquire
Gauri P. Punjabi, Esquire
MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO, PC
One Financial Center
Boston, MA 02111
bacohen@mintz.com
gppunjabi@mintz.com
*Counsel for Defendants*
*Admitted Pro Hac Vice*


**HAINES & ASSOCIATES**


Dated:  April 26, 2016

BY:  /s/ *Clifford E. Haines*
     Clifford E. Haines
     The Widener Building, 5th Floor
     1339 Chestnut Street
     Philadelphia, PA 19107
     Telephone: 215-246-2200
     chaines@haines-law.com
     *Counsel for Plaintiff, Mark Cairns*