IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARK CAIRNS, | : | |
|     *Plaintiff,* | : | CIVIL ACTION |
| vs. | : | |
| | : | |
| HIBU PLC, HIBU INC., MIKE POCOCK, | : | |
| TONY BATES, BOB WIGLEY, | : | |
| ELIZABETH G. CHAMBERS, JOHN | : | |
| COGHLAN, TOBY COPPEL, CARLOS | : | NO.: 2:14-CV-05671 |
| ESPINOSA de los MONTEROS, | : | |
| KATHLEEN FLAHERTY, RICHARD | : | |
| HOOPER and BOB GREGERSON, | : | |
|     *Defendants.* | : | |

## PLAINTIFF'S PRETRIAL MEMORANDUM

Pursuant to L. Civ. R. 16.1 (c) and the Court's Scheduling Order, Plaintiff submits the following Pretrial Memorandum:

**I.     STATEMENT OF NATURE OF THE CASE AND COURT'S JURISDICTION**

Plaintiff Mark Cairns brings this civil action alleging two counts. Count I is for defamation and Count II is for violation of the Pennsylvania wage payment and collection law. The claims arise out of statements made in an email sent company-wide following the termination of Mr. Cairns from hibu, inc., the U.S. business lines of UK company, hibu PLC. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), because there is complete diversity of citizenship between the plaintiff and defendants and the amount in controversy exceeds $75,000.[1]  Furthermore, the amount in controversy exceeds the local compulsory arbitration limit.

---

[1] This matter was removed to the Federal Court by the defendants pursuant to 28 U.S.C. § 1441(a).

II.     FACTUAL SUMMARY

   A.   Mark Cairns' Employment History at hibu (or Its Predecessor Entities).

In February 1984, Plaintiff Mark Cairns began his long-term employment with the company known today as hibu Inc., which has offices in King of Prussia, Pennsylvania, among other locations within the United States. hibu Inc. is a wholly owned subsidiary of hibu, PLC, which is based in the United Kingdom.[2] hibu is a print and digital media company with operations worldwide and is the company formerly known as Yellowbook. Mr. Cairns was continuously employed at hibu (or one of its predecessor entities) from February 1984 until March 6, 2013, at which time he was terminated. At the time of Mr. Cairns termination, he was the Head of Operations of the US/UK operations. Cairns had held this position since 2011.

   B.   hibu's Declining Financial Condition.

In March 2013, when Cairns was terminated, hibu was in poor financial condition. Indeed, it was in the midst of a process in the UK similar to a business reorganization in US Bankruptcy Court. A coordinating committee ("CoCom") was put into place to negotiate and facilitate the repayment of hibu's debt to its 300 lenders. All strategic decisions were run through CoCom and its advisors. This included an aggressive forecast for generating revenue at hibu. These initiatives were a failure. hibu PLC is now in administration (the UK equivalent of bankruptcy).

Cairns was not shy about voicing his concerns regarding the efficacy of Pocock's plan to generate increased digital revenue at hibu. Cairns was fiercely protective of hibu and wanted nothing more than for it to succeed, but did not believe Pocock's plan would work. Indeed, it was revealed after Cairns was terminated that the only programs in place at the time of his

---

[2] hibu is used interchangeably to refer to hibu Inc. and hibu, PLC. When the particular entity is being referred to specifically and in a legally significant way, the specific entity name will be used.

2

employment that generated any revenue for hibu US at all were those business lines on which he worked and which were in placed before Pocock came on board at hibu. Cairns loyalty ran, as it should have, to hibu and its stakeholders.

### C. hibu "Investigates" Cairns and Others Via Project Green.

Cairns was terminated as a result of an investigation into potential corporate disloyalty known as Project Green, conducted for hibu by Malcolm Green and Christian Wells. Essentially, hibu believed that Cairns' ongoing communications with former hibu Inc. CEO, Joe Walsh, his personal mentor and friend, were evidence that Cairns was passing sensitive corporate information to Walsh, an outsider. But, hibu witnesses confirm that hibu was aware that Walsh was in communication with representatives of CoCom and was preparing to make a third attempt to purchase the hibu US business. Walsh was, in fact, in contact with representatives of CoCom in February/March 2012.

Indeed, in connection with the "investigation" into the conduct of Mr. Cairns and Mr. McCusker putatively leading to their termination, called Project Green (named for the investigator Malcolm Green), no employee interviewed identified Cairns or McCusker as a source of information being allegedly leaked to Walsh. For example, Patti Seda, the Director of Human Resources at hibu, confirmed that she herself (as were other senior managers) aware that CoCom was in communication with Joe Walsh and that he was preparing to make another attempt to purchase hibu US. She says she learned this information directly from Christian Wells, hibu's general counsel in the UK. Then hibu CEO, Pocock also admitted at his deposition that he was aware that Walsh was in touch with representatives of CoCom.

Notably, Ms. Seda also confirmed that she was in regular contact with Joe Walsh, as well as another former CEO of the company. Yet, she was not terminated in connection with Project Green. Ms. Seda's interview is important for three reasons: 1) she is the only other person

besides Cairns and McCusker who was interviewed on March 6, the termination dates; 2) she establishes that it was known throughout the company by senior management that Joe Walsh was interested in preparing a purchase offer and that Joe Walsh was in touch with CoCom in that regard; and 3) a direct source of information about Joe Walsh and his potential plans was hibu's counsel, Christian Wells, a participant in the investigatory interview. In other words, neither Cairns nor McCusker was disseminating any information that was not coming also from hibu's investors/advisors and/or hibu's attorney—sources other than Cairns or McCusker.

The "investigation" into this alleged disloyal conduct was anything but thorough. Indeed, prior to the termination of Cairns' employment, it consisted of fewer than ten interviews of hibu employees and resulted in the identification of no documents supporting the conclusion that Cairns was the source of confidential information to Walsh. None of Cairns' team was interviewed. This is remarkable given that, according to Pocock, Cairns led the largest team in the US outside of sales. With the exception of the interview with Ms. Seda, Cairns and McCusker, none of these employee interviews was conducted on or before March 6, 2013, the day Cairns was terminated.

The only potential "evidence" of disloyalty offered by anyone at hibu is a putative analysis of the number of telephone communications between Cairns and Joe Walsh created by hibu IT. But, again, the investigation did not lead to any information regarding the substance of any call between Cairns and Walsh. Indeed, Cairns viewed Walsh as a mentor and personal friend. Indeed, the defendants cite as evidence to their motion, at least one email in which Mr. Walsh invited Mr. Cairns and his wife to join him at a social outing. There is no dispute here that Cairns and Walsh were former colleagues and have remained socially friendly in the months surrounding Cairns' termination from hibu. These calls identified on a call log could just as

easily be benign social calls than calls of any nefarious or disloyal nature. For purposes of this motion, they must be viewed as such.

Christian Wells and Malcolm Green, had little more than phone records establishing that Cairns and McCusker had either placed or received calls to/from Joe Walsh. They had no evidence regarding what, if anything, was said on the calls or the nature of the calls. No person who has been deposed in this case has had knowledge of any specific information that was passed from Cairns to Joe Walsh.

Indeed, Green's own testimony belies that there is or ever was any evidence to support that Cairns was disloyal to hibu Most of the interviews in connection with Cairns' termination took place after he was already terminated. Green even admitted one interviewee, John Butler, suggested CoCom was feeding information to Joe Walsh and he did not believe any information was coming from any hibu employee. Finally, Green admitted at his deposition that he is unaware of any evidence that Cairns gave any confidential information to Joe Walsh.

Nonetheless, Cairns was terminated. Pocock testified that Cairns' termination was approved by the Board of Directors. But, a then-board member, Richard Hooper, testified at this deposition that he did not recall that the board gave instruction to terminate Cairns nor was it asked to approve Cairns' termination. Given that the investigation appears not to have started before March 6, 2013, it is nearly impossible to believe that Pocock obtained Board approval for the termination of Cairns or McCusker before the decision was made to do so.

Cairns was never disloyal to hibu. He did nothing to actively undermine the authority of Pocock, even if he did not like Pocock, his plans, or his leadership style. As evidenced by the attempts to attract a purchase offer from Walsh, at or about the time Cairns was terminated, the CoCom was clearly dissatisfied with Pocock's plans and had limited faith in Pocock's abilities to

5

remove hibu from financial crisis.  There is simply no evidence that undivided loyalty to Pocock was a necessary requirement for corporate loyalty to hibu or that Cairns was ever disloyal to hibu.

      **D.**      **hibu's CEO Circulates Defamatory Email.**

On March 6, 2013, then hibu CEO, Michael Pocock, disseminated an email to all employees of hibu US and the Senior Management Team, roughly 3,000 people.  The email states that "following a thorough investigation into conduct by them that the company considered to be disloyal and against the interests of its employees and other stakeholders," Mark Cairns and another member of the Senior Manager, Jim McCusker were terminated effective immediately.

This email forms the basis of Cairns' defamation claim against hibu.  Indeed, it was widely disseminated to thousands of hibu employees in the US (and to senior executives in the UK), alleging that Cairns engaged in corporate disloyalty.  This is a particularly offensive accusation given that Cairns had been employed at the company (or a predecessor) for nearly 30 years.

      **E.**      **hibu Fabricated Cause to Terminate Cairns to Avoid Paying Him Severance.**

Indeed, hibu had an incentive to terminate Cairns for cause.  Although hibu appears to steadfastly dispute the terms of Cairns' employment and the existence of either a written contract or a contract by implication, Mr. Wells, hibu's general counsel, testified at his deposition that Mr. Cairns and Mr. McCusker (who hibu admits was subject to an employment contract), were employed under the exact same terms of employment and Cairns' severance rights would be measured and distributed using the same method as McCusker.  Thus, Green and Wells perhaps initiated Project Green in order to fabricate cause in order to rid the company of two senior level executives who were fiercely loyal to hibu, but who were not particularly loyal to Pocock.  Indeed, replacing these executives served only Pocock's interests.  Under the practice in place at

hibu, Cairns was entitled to five weeks pay, plus a week of pay for every year of service to the company on the occasion of his termination. This is entirely consistent with Cairns' deposition testimony regarding the pattern of practice with respect to severance pay in the hibu US offices.

      **F.**      **The Defamatory Statement Reached Thousands, Even Outside of hibu.**

Mark Cairns has been forced to spend time and energy to repair his reputation after the statements in the email disseminated on March 6, 2013 were made publically available. Indeed, shortly after the announcement of his termination, Cairns received emails from people outside of the hibu organization sending links to a blog post announcing Cairns' termination for cause. After his termination, Cairns attempted to help a company called Access Holdings attract investors. He'd be asked questions about his termination from hibu at investor meetings in a disapproving way. He also had trouble attracting the assistance of a headhunter when looking for a new job after his termination, at least in part, because of the allegations made about him by hibu, which were posted on the internet. It took until October 2014 for Cairns to get a job in his field for a real salary.

Cairns also lost friendships over the defamatory statements made about him. He made an effort to renew the friendships, but there has been no response to his attempts to reinvigorate the friendships.

**III.**      **WITNESSES TO BE CALLED AT TRIAL**

      1.      Mark Cairns, Plaintiff
            c/o Haines & Associates
            The Widener Building, 5th Floor
            1339 Chestnut Street
            Philadelphia, PA 19107

Mr. Cairns will testify regarding issues related to liability and damages. He is the plaintiff in this case.

    2.       James McCusker
               c/o Haines & Associates
               The Widener Building, 5th Floor
               1339 Chestnut Street
               Philadelphia, PA 19107

Mr. McCusker filed a related claim that was transferred to the United States District Court for the Eastern District of New York. Mr. McCusker has information related to liability. Much of the discovery in these cases has been consolidated.

    3.       Malcolm Green
               c/o Mintz Levin (counsel for Defendants)

Mr. Green will be called on to testify regarding issues related to liability. He was tasked with the "investigation," referred to as Project Green, that resulted in Mr. Cairns' termination.

    4.       Christian Wells
               c/o Mintz Levin (counsel for Defendants)

Mr. Wells is hibu PLC's in-house general counsel. He will be called to testify regarding issues related to liability. It is believed that Mr. Wells drafted and/or authorized the sending of the March 6, 2013 email that forms the basis of the Plaintiff's defamation claim.

    5.       Mike Pocock
               c/o Mintz Levin (counsel for Defendants)

Mr. Pocock is hibu's former CEO. He will be called to testify regarding issues related to liability. Mr. Pocock signed and disseminated the the March 6, 2013 email that forms the basis of the Plaintiff's defamation claim.

    6.       Patti Seda
               Ms. Seda resides in Cedar Rapids, Iowa. Her exact address is unknown.
               (319) 431-0555

Ms. Seda is the former hibu Director of Human Resources. She will be called to testify regarding issues related liability, in particular regarding the terms and conditions associated with

Mr. Cairns' employment terms and the existence of an employment contract, the existence of which hibu denies.

7. Joseph Walsh
   11600 Partridge Run Lane
   Potomac, MD 20854
   (301) 280-5100

Mr. Walsh is a former CEO of hibu, and the immediate predecessor of Mr. Pocock. He will be called on to testify regarding liability.

8. Tony Bates
   c/o Mintz Levin

Mr. Bates is a former hibu employee, who was deposed in this case and was identified by the Defendants as someone with knowledge regarding claims and defenses in this case.

9. Gary Shaw

Mr. Shaw is a former hibu employee, who was also terminated at or around the same time as Mr. Cairns and for similar reasons. Mr. Shaw has information regarding liability.

10. Richard Hooper
    c/o Mintz Levin

Mr. Hooper is a former hibu employee, who was deposed in this case and was identified by the Defendants as someone with knowledge regarding claims and defenses in this case.

11. Chris Wilson
    Houlihan Lokey
    10250 Constellation Boulevard
    5th Floor
    Los Angeles, CA 90067

It is believed that Mr. Wilson has information regarding attempts by the creditors committee ("CoCom") to facilitate a sale of hibu's U.S. business lines to a willing buyer, including but not limited to Mr. Walsh.

## IV. SCHEDULE OF EXHIBITS

- P1  Email dated March 6, 2013 from Corporate Communications Group to Corporate Communications Group, signed by Mike Pocock

- P2  Letter terminating Cairns' Employment, dated March 6, 2013

- P3  Yell Group plc Annual Report for the year ended 31 March 2012

- P4  Deposition of Christian Wells with Exhibits

- P5  Deposition of Malcolm Green with Exhibits

- P6  Deposition of Mike Pocock with Exhibits

- P7  Deposition of Chris Wilmot

- P8  Deposition of Tony Bates

- P9  Deposition of Richard Hooper with Exhibits

- P10  Deposition of Bryan Turner

- P11  Project Green Draft Note of Interview with Patti Seda, hibu0000294-0000296

- P12  Project Green Draft Note of Interview with John Gregory hibu0000282-hibu0000287

- P13  Project Green Draft Note of follow-up Interview with John Gregory hibu0000288-hibu0000293

- P14  Project Green Draft Note of Interview with John Wholey hibu0000306-hibu0000308

- P15  Project Green Draft Note of Interview with John Butler hibu0000273-hibu0000281

- P16  Email from Richard Hooper to Mike Pocock cc to Christian Wells, dated 2/12/13, hibu0000256

- P17  Email from Bob Wigley to Mike Pocock, Christian Wells, Tony Bates, Simon Freakley, cc to Richard Hooper, dated 2/15/13 hibu0000297

- P18  Cairns' Personnel File as Produced by hibu in discovery

- P19  hibu document: Our Code of Ethics, hibu0000405-hibu0000427

- P20  Summary Note of Interviews, hibu0000315-hibu0000317

    P21    Defendants' Answers to Interrogatories

    P22    Defendants Answers to Requests for Admission

    P23    Any document produced by the Defendants in discovery

    P24    All Pleadings and Motions in this matter

    P25    Any document identified in the Defendants' Pretrial Memorandum

Plaintiff reserves the right to amend this list up to the time of trial with proper notice to all counsel and the Court.

## V. DEPOSITION DESIGNATIONS

Deposition designations will be determined closer to the time of trial. Many of the witnesses in this case are outside of the Court's jurisdiction and reside in London, UK. Some of the witnesses have said that if their schedules permit, they will agree to testify. Until the trial is actually scheduled, it is unknown whether the witnesses will testify live.

Plaintiff reserves the right to designate portions of depositions with proper notice to the Court and all counsel once trial is scheduled and it can be ascertained whether the foreign witness will voluntarily appear.

## VI. DAMAGES

As previously identified in Amended Initial Disclosures, Plaintiff is entitled to the following items and categories of damages, and where applicable, in the following amounts:

- Compensatory:
    - For lost wages: $360,000 (period of employment from 3/6/13-10/1/14).
    - For loss of reputation: Unliquidated amount to be determined by a jury.
    - WPCL $156,000 plus statutory penalty and counsel fees.
- Punitive:
    - For defamation: Unliquidated amount to be determined by a jury.

VII.   **STIPULATIONS**

None at this time.

VIII.   **OBJECTIONS TO ADMISSIBILITY OF EVIDENCE**

None at this time.  The parties did not exchange exhibit lists prior to the filing of their respective memoranda, so it is unknown whether any objection will arise as a result of the Defendants' filing.

IX.   **TRIAL TIME**

The trial is expected to last 5-7 trial days.

X.   **OUTSTANDING LEGAL ISSUES**

At present there is an outstanding motion for summary judgment, the outcome of which will determine whether and to what extent there are further legal issues to be resolved at this time.

Further, the parties have no exchanged witness lists prior to this filing, so it is unknown whether and to what extent there will be any motions in limine related to that or any other evidentiary issues.

The parties have not yet been required to file motions in limine.

                        Respectfully submitted:

                        **HAINES & ASSOCIATES**

                        */s/ Clifford E. Haines*
                        CLIFFORD E. HAINES
                        DANIELLE M. WEISS
                        The Widener Building, 5th Floor
                        1339 Chestnut Street
                        Philadelphia, PA 19107
                        (215) 246-2200
                        (215) 246-2211

Dated: June 13, 2016                        *Attorneys for Plaintiff*

# **CERTIFICATE OF SERVICE**

I, Clifford E. Haines, Esquire, hereby certify that a true and correct copy of the foregoing Plaintiff Mark Cairns' Amended Initial Disclosures was served via electronic mail and through the Court's ECF System, to the addressed as follows:

| | |
|---|---|
| William M. McSwain, Esquire | Bret A. Cohen, Esquire |
| David J.Woolf, Esquire | Gauri P. Punjabi, Esquire |
| Dennis M. Mulgrew, Jr., Esquire | MINTZ LEVIN COHN FERRIS |
| DRINKER BIDDLE & REATH LLP | GLOVSKY AND POPEO, PC |
| One Logan Square, Suite 2000 | One Financial Center |
| Philadelphia, PA 19103-6966 | Boston, MA 02111 |
| William.McSwain@dbr.com | bacohen@mintz.com |
| David.Woolf@dbr.com | gppunjabi@mintz.com |
| Dennis.Mulgrew@dbr.com | *Counsel for Defendants* |
| *Counsel for Defendants, hibu PLC;* | *Admitted Pro Hac Vice* |
| *hibu, Inc. and Michael Pocock* | |

HAINES & ASSOCIATES

Dated:  June 13, 2016               /s/ *Clifford E. Haines*
                                                      Clifford E. Haines, Esquire
                                                      The Widener Building, 5th Floor
                                                      1339 Chestnut Street
                                                      Philadelphia, PA 19107
                                                      Telephone: 215-246-2200
                                                      chaines@haines-law.com